# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HAKAN YALINCAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | CIVIL CASE NO: |
| | ) | |
| DAN MANGAN, NEW YORK | ) | |
| POST HOLDINGS, INC., MICHAEL | ) | |
| WALTER, PAUL ARDAJI, | ) | |
| ARDAJI RESTAURANT | ) | |
| VENTURES, LLC, THOMAS | ) | |
| HENKELMANN, AND THERESA | ) | |
| HENKELMANN, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AND JURY DEMAND

As and for his Complaint, the Plaintiff, Hakan Yalincak, hereby alleges as follows:

## I.        PRELIMINARY STATEMENT

1.   This Complaint arises from the defendants' defamatory, derogatory, false, and reckless publication of numerous articles beginning in or about May 2005 and continuing to in or about January 2007, including, without limitation an article published on or about May 1, 2006 (hereinafter referred to as the "article") in the New York Post. On May 1, 2006, the defendants, New York Post Holdings, Inc. (hereinafter referred to as the "Post"), the publisher of the New York Post news paper and writer Dan Mangan (hereinafter referred to as "Mangan"), published and caused to be published the defamatory, derogatory, false, and reckless article with an intentional disregard for the accuracy of their statements. Indeed, on January 22, 2007 the defendant Mangan made an

1

admission that he did not check the veracity of his source(s). During the said phone call, Mangan provided a list of certain individuals and/or entities he had talked to in publishing the said article(s). Continuing from in or about May 2005 to on or about January 22, 2007, the Plaintiff has asked that the defendants "cease and desist" from continuing such actions. In fact, as recently as January 22, 2007, the Plaintiff's attorney, Edwin T. Gania, Esq., of Mark Jacob Thomas & Associated advised Mangan and the Post, through its counsel, Michael Cameron, to "cease and desist" from continuing such actions.  Indeed, Edwin T. Gania, Esq. of Mark Jacob Thomas & Associates delivered to the defendants, via facsimile and regular mail, a letter stating in part, "demand is hereby made on the New York Post Holdings, Inc., its agents, officers, journalists/reporters, representatives, as well as, affiliates, subsidiaries, and any direct or indirect third-party associates of the New York Post Holdings, Inc. to cease and desist from exploiting the family in any way shape or form and to retract your reckless publication(s) with an apology without delay." To date, the Post has denied, disregarded, and/or ignored such requests by the Plaintiff and his attorneys. In this Complaint, the Plaintiff seeks declaratory and injunctive relief, damages related to the defendants' publication of the said article(s), which is defamatory on its face, as well as, for intentional infliction of emotional distress, or in the alternative, negligent infliction of emotional distress, for the humiliation and loss of reputation suffered by the Plaintiff, as well as, all costs, disbursements, and expenses incurred by the Plaintiff in the prosecution of this act on.

2

## II.    PARTIES

2.  The Plaintiff, Hakan Yalincak ("Yalincak"), is an individual and a resident of the State of Rhode Island.

3.  The Defendant, Dan Mangan ("Mangan"), is an individual and a resident of the State of New York and a writer at the New York Post news paper published by New York Post Holdings, Inc.

4.  The Defendant, New York Post Holdings, Inc. ("the Post"), is a corporation formed under the laws of the State of Delaware, with a principal place of business located at 1211 Avenue of the Americas, New York, New York and authorized to do business in the State of Connecticut.

5.  The Defendant, Michael Walter, is an individual and a resident of the Federal Republic of Germany.

6.  The Defendant, Paul Ardaji ("Ardaji"), is an individual and a resident of the State of Connecticut.

7.  The Defendant, Ardaji Restaurant Ventures, LLC ("ARVLLC"), is a limited liability company formed under the laws of the State of Connecticut with a principal place of business located at 287 Greenwich Ave., Greenwich, Connecticut.

8.  The Defendant, Thomas Henkelmann ("Mr. Henkelmann"), is an individual and a resident of the State of Connecticut and owner of the Thomas Henkelmann Restaurant located at 420 Field Point Road, Greenwich, Connecticut.

9.  The Defendant, Theresa Henkelmann ("Mrs. Henkelmann" and collectively with Mr. Henkelmann, "Mr. And Mrs. Henkelmann"), is an individual and a resident of the State of Connecticut and operator of the Homestead Inn., located at 420 Field Point Road, Greenwich, Connecticut.

## III.    JURISDICTION AND VENUE

10.  This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 (a)(1) (diversity action where the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs, and is between citizens of different states); and 28 U.S.C. § 1367(a) (supplemental, as well as, ancillary and pendant jurisdiction principles).

11.    Venue is proper in this Court pursuant to (a) 28 U.S.C. §§1391(b)(1) and (2) because all defendants reside in Connecticut and a substantial part of the events or omissions giving rise to the claims occurred in the District of Connecticut.

## STATEMENT OF FACTS

## IV. BACKGROUND

## A. MANGAN AND THE POST

12.    The Defendant Mangan, caused to be published numerous defamatory, derogatory, false, and reckless articles beginning in or about May 2005 and continuing to in or about January 2007, including, without limitation an article published on or about May 1, 2006 in the Post. On May 1, 2006, the defendants, the Post and Mangan, published and caused to be published the

defamatory, derogatory, false, and reckless article with an intentional disregard for the accuracy of their statements[1].

13.     Indeed, on January 22, 2007 the defendant Mangan made an admission that he did not check the accuracy of his source(s) (emphasis added). During the said phone call, Mangan provided a list of certain individuals and/or entities he had talked to in publishing the said article(s).

13.     The defendants Mangan and the Post represented that Mangan talked to the following individuals:  (a) Paul Ardaji; (b) Thomas Henkelmann; and (c) Theresa Henkelmann.

14.     The defendants Mangan and the Post published in their articles, and/or caused to be published, through the period beginning in or about May 2005 and continuing to on or about January 22, 2007 defamatory, derogatory, false, and reckless statements from the following individuals:  (a) defendant Walter; (b) defendant Ardaji; (c) defendant ARVLLC; (d) defendant Mr. Henkelmann; and (e) defendant Mrs. Henkelmann.

15.     Among the numerous statements, the defendants caused untrue statements to be published regarding the Plaintiff commenting, in part, as follows: (a) business dealings between Ardaji and the Plaintiff; (b) business dealings between ARVLLC and the Plaintiff, including, without limitation, SACS Global Trust & Mortgage, LLC f/k/a Greenwich Global Trust & Mortgage, Inc.; (c) restaurant dinners and/or meetings at the Homestead Inn.

---

[1] The full list of the articles is not listed and/or attached to this instant Complaint as it would be tantamount to republication of the said articles, or free advertisement. Furthermore, the full list of articles, despite requests by counsel, has not been furnished to the Plaintiff and his attorneys.

and/or Thomas Henkelmann Restaurant; and (d) the Plaintiff's class work at the New York University (i.e., quoting Pere Goriot, by Honore de Balzac, in its May 2005 article).

## B. DISCOVERIES ON ARDAJI AND ARVLLC

16.     The defendants Mangan and the Post, in reliance on Ardaji's and ARVLLC's statements, published and caused to be published numerous articles during the month of May 2005.

17.     The Post was advised, directly and through counsel, of the inaccuracy of the information provided by Ardaji and further advised of the numerous claims of the Plaintiff against Ardaji and ARVLLC.

19.     The Post was advised, in relevant part, by the Plaintiff's counsel and family, as follows: (a) that Ardaji and ARVLLC had provided false information in an attempt to get a loan from SACS Global Trust & Mortgage, LLC f/k/a Greenwich Global Trust & Mortgage, Inc. (hereinafter "Greenwich Global"), a mortgage company owned by the Plaintiff; (b) that in or about August 2004, Ardaji and ARVLLC, had provided false information to a subsidiary of Credit Agricole Indosuez, in an attempt to refinance a vacation home in France; (c) that on July 15, 2004, Ardaji sexually assaulted an employee of Greenwich Global, Amanda Jehncky, causing  a complaint to be filed against him; (d) that in or about the fall of 2004, a complaint was filed with the Pound Ridge Police Department against Ardaji for, inter alia, harassment, and threats; (e) that Ardaji owed substantial sums to the Plaintiff and his family due to his fraudulent misrepresentations in connection with his

attempts to obtain refinancing on his home in France, and in connection with his attempts to obtain financing for a new project operated by ARVLLC. Indeed, amongst other misrepresentations, Ardaji failed to disclose the fact that in or about 1996 he had declared bankruptcy and that in an effort to ward of creditors he had transferred his Greenwich, Connecticut home to his wife's [Lena Ardaji's] name. As a result of such fraudulent misrepresentations by defendants Ardaji and ARVLLC, Greenwich Global suffered a loss of at least $100,000.00.

## C.  DISCOVERIES ON WALTER

20.      The defendants Mangan and the Post, in reliance on defendant Walter's statements, published and caused to be published numerous articles beginning in or about the month of May 2005 and continuing to on or about January 22, 2007.

21.      The Post was advised, directly and through counsel, of the inaccuracy of the information provided by Walter and further advised of the numerous claims of the Plaintiff against Walter.

22.      The Post was advised, in relevant part, as follows: (a) that Walter's had a criminal complaint filed against him by several members of the Seventh-Day Adventists Church in 1992 in connection with "inappropriate acts," including sexual abuse and molestation of minors leading to his reassignment from Japan to Germany; (b) that Walter's had made defamatory, derogatory, false, and reckless statements, as follows, "When I read about Hakan's arrest last year, I wasn't surprised, though, given the influence of his

parents…" ; and (c) that in connection with Walter's statements the Plaintiff and his family had filed a suit against him [Walter].

23.     Indeed, despite such information and evidence to the contrary of Walter's claims, the Post chose, whether intentionally or negligently, to publish such articles which contain defamatory statements causing significant emotional distress, humiliation and loss of reputation to the Plaintiff.

24.     The Plaintiff, through his family and counsel, submitted letters of support from members of his local church, his former high school principal, as well as, from family members; however, despite such information the Post chose to ignore such information. (A copy of the said information is collectively attached hereto as Exhibit A.)

25.     The Plaintiff, through his family and counsel, advised the Post that on or about December 13, 2006 there was information (Exhibits A-R) entered in the criminal case(s) and that the Post's continuing publication of such defamatory, derogatory, false, and reckless statements had caused and would so continue to cause irreparable harm to the Plaintiff and his family[2]. However, despite such efforts the Post continues, undeterred in its actions.

## D.  DISCOVERIES ON HENKELMANN

26.     The defendants Mangan and the Post, in reliance on the defendants' Mr. & Mrs. Henkelmann's statements, published and caused to be published

---

[2] The Court. Margolis, M.J., entered an Order Setting Conditions for Release ("Order") on December 20, 2006. In addition, on appeal by the Government pursuant to 18 U.S.C. § 3145(a)(1), the Court, Arterton, J., upheld the Order and Yalincak was released on bail pursuant to 18 U.S.C. 3143 on January 5, 2007.

numerous articles beginning in or about the month of May 2005 and continuing to on or about January 22, 2007.

27.      The Post was advised, directly and through counsel, of the inaccuracy of the information provided by Mr. And Mrs. Henkelmann, i.e., the Homestead Inn.

28.      The Post was offered, directly and through counsel, evidence of the falsity and inaccuracy of the information provided by Mr. And Mrs. Henkelmann[3].

29.      The defendants Mangan and the Post have failed to cease and desist from their reckless actions as described above and have continued to engage in such actions by continuing to publish defamatory, derogatory, false, and reckless statements.

30.      The defendants Ardaji and ARVLLC have failed to cease and desist from their reckless actions as described above and have continued to engage in such actions by continuing to slander the Plaintiff and causing to be published defamatory, derogatory, false, and reckless statements.

31.      The defendants Mr. Henkelmann and Mrs. Henkelmann have failed to cease and desist from their reckless actions as described above and have continued to engage in such actions by continuing to slander the Plaintiff and

---

[3] See, The Omer B. Yalincak and Ayferafet Yalincak Family Foundation v. Thomas Capital Management, et al., Case No. CV-06-5000975-S (default entered July 2006 in favor of the Plaintiff) and The Omer B. Yalincak and Ayferafet Yalincak Family Foundation v. Cormac B. Meehan, Case No. CV-06-5001386-S. See also, HMMH Holdings, LLC v. Ralph Hallenborg et al, Case No. CV-06-5000975-S; Hakan Yalincak v. Michael Sherman (Federal Grievance); Hakan Yalincak v. Michael Sherman, Grievance Complaint No. 06-0312.

causing to be published defamatory, derogatory, false, and reckless statements.

32.      As a result of the foregoing, the Plaintiff has been damaged and has had to expend time, money, and resources to respond to the various defamatory, derogatory, false, and reckless statements of the defendants.

33.      Absent declaratory and injunctive relief, the Plaintiff will have no adequate remedy at law and will continue to be so damaged.

## V.      CAUSES OF ACTION

### COUNT I

### (DECLARATORY AND INJUNCTIVE RELIEF)

### (AS TO ALL DEFENDANTS)

34.      The Plaintiff hereby repeats and realleges each and every allegation set forth in paragraphs 1-33, above, as if fully set forth herein.

35.      As described above, the Plaintiff has been damaged and has had to expend time, money, and resources to respond to the various defamatory, derogatory, false, and reckless statements of the defendants.

36.      The Defendants, Mangan and the Post, on January 22, 2007 admitted during a telephone conversation of the fact that they had failed to ascertain whether the statements being made by their sources were in fact accurate and/or reliable.

37.      The Defendants, Mangan and the Post, on January 22, 2007 upon being notified of the initiation of the present complaint, stated, in part, that they were "lawsuit proof."

38.     As a result of the foregoing, the Plaintiff has been damaged and has had to expend time, money, and resources to respond to the various defamatory, derogatory, false, and reckless statements of the defendants, Mangan and the Post.

39.     Absent declaratory and injunctive relief by this Court, enjoining the defendants Mangan and the Post from continuing to engage in such conduct, the Plaintiff will have no adequate remedy at law and will continue to be so damaged[4].

## COUNT II

## DEFAMATION

## (AS TO ALL DEFENDANTS)

40.     The Plaintiff hereby repeats and realleges each and every allegation set forth in paragraphs 1-39, above, as if fully set forth herein.

41.     The Defendants made false and defamatory statements of fact regarding the Plaintiff with reckless disregard or negligence for the accuracy of such statements.

42.     The Defendants caused such false and defamatory statements to be published and/or broadcast.

43.     As a result thereof, the Plaintiff demands judgment against the defendants herein, jointly and severally, in the form of $5,000,000.00 in

---

[4] See, Federal Rules of Civil Procedure 65. See also, Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249 (2d. Cir. 1999) ("To justify the issuance of preliminary injunctive relief, a party must ordinarily show that it will suffer irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground of litigation and a balance of hardships that tips decidedly in the movant's favor.")

compensatory and special damages, and $100,000,000.00 in punitive and exemplary damages for the humiliation and loss of reputation suffered by the Plaintiff, as well as, all costs associated with the prosecution of this act on.

## COUNT IV

## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

## (AS TO ALL DEFENDANTS)

44.     The Plaintiff hereby repeats and realleges each and every allegation set forth in paragraphs 1-43, above, as if fully set forth herein.

45.     The Defendants intended to inflict emotional distress on the Plaintiff, or should have known that emotional distress was the likely result of their conduct.

46.     The Defendants acted with intentional malice, in that they had received numerous correspondences from the Plaintiff and Counsel for the Plaintiff to cease and desist from continuing to engage in conduct described above.

47.     The conduct of the Defendants is the direct cause of the Plaintiff's distress. Indeed, as a result of the Defendants' conduct the Plaintiff has had to expend time, money, and resources, as well as, seek counseling to address the distress caused by the Defendants.

48.     The emotional distress caused by the Defendants is severe and the allegations and statements made by the Defendants in ridiculing sensitive health concerns exceed all bounds usually tolerated by a decent society.

49.      As a result thereof, the Plaintiff demands judgment against the defendants herein, jointly and severally, in the form of $5,000,000.00 in compensatory and special damages, and $100,000,000.00 in punitive and exemplary damages for the humiliation and loss of reputation suffered by the Plaintiff, as well as, all costs associated with the prosecution of this act on.

## COUNT V

## (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

## (AS TO ALL DEFENDANTS)

50.      The Plaintiff hereby repeats and realleges each and every allegation set forth in paragraphs 1-49, above, as if fully set forth herein.

51.      The allegations contained in Count IV, supra, in the alternative, constitute Negligent Infliction of Emotional Distress, if not Intentional Infliction of Emotional Distress.

52.      The Defendants should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.

53.      As a result thereof, the Plaintiff demands judgment against the defendants herein, jointly and severally, in the form of $5,000,000.00 in compensatory and special damages, and $100,000,000.00 in punitive and exemplary damages for the humiliation and loss of reputation suffered by the Plaintiff, as well as, all costs associated with the prosecution of this act on.

## COUNT VI

## (COMMON LAW FRAUD)

## (AS TO ARDAJI AND ARVLLC ONLY)

54.     The Plaintiff hereby repeats and realleges each and every allegation set forth in paragraphs 1-53, above, as if fully set forth herein.

55.     As a result of the conduct alleged herein, the Defendants knowingly made fraudulent misrepresentations and omissions of material facts as stated in ¶¶16-19.

56.     As a result of such fraudulent misrepresentations by defendants Ardaji and ARVLLC, Greenwich Global suffered a loss of at least $100,000.00.

## VI.     PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays for relief and judgment, against the Defendants as follows:

1.     Awarding the Plaintiff, in the form of a judgment against the defendants, an injunctive order enjoining the defendants from continuing to engage in such conduct as described herein, or if impractical, award the Plaintiff compensatory, incidental, and special damages;

2.     Awarding the Plaintiff, in the form of a judgment against the defendants, actual damages pursuant to Conn. Gen. Stat. Section 42g(a);

3.     Awarding the Plaintiff, in the form of a judgment against the defendants, $100,000,000 in punitive and exemplary damages to the extent

of the Plaintiff's entitlement thereto under applicable laws, including pursuant to Conn. Gen. Stat. Section 42-110g(a);

4.      Awarding the Plaintiff all costs and disbursements he incurred in this act on;

5.      Awarding the Plaintiff such other and further relief, both legal and equitable, as this Court, in its discretion may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff hereby demands a trial by jury as to all issues so triable.

DATED: _____1/23/07_____

Respectfully submitted,
HAKAN YALINCAK,

Hakan Yalincak, Pro Se
c/o Bernard M. Grossberg, Esq.
30 Woodland St.
Suite 11-I
Hartford, CT 06105
(860) 247-0138 Tel.
(617) 737-8223 Fax.
bgrossberg@grossberglaw.com

## ORDER RE:  DISCLOSURE STATEMENT

ANY NON- GOVERNMENTAL CORPORATE PARTY TO AN ACTION IN THIS COURT SHALL FILE A STATEMENT IDENTIFYING ALL ITS PARENT CORPORATIONS AND LISTING ANY PUBLICLY HELD COMPANY THAT OWNS 10% OR MORE OF THE PARTY'S STOCK. A PARTY SHALL FILE THE STATEMENT WITH ITS INITIAL PLEADING FILED IN THE COURT AND SHALL SUPPLEMENT THE STATEMENT WITHIN A REASONABLE TIME OF ANY CHANGE IN THE INFORMATION. COUNSEL SHALL APPEND A CERTIFICATE OF SERVICE TO THE STATEMENT IN COMPLIANCE WITH D. CONN. L. R. 5(C).

COUNSEL FOR THE PLAINTIFF OR REMOVING DEFENDANT SHALL BE RESPONSIBLE FOR SERVING A COPY OF THIS ORDER UPON ALL PARTIES TO THE ACTION.

BY ORDER OF THE COURT

KEVIN F. ROWE, CLERK

(effective January 1, 2003)